## No. 2547.

## SARAH COLE ET AL. v. JOHN C. TERRELL ET AL.

1. RIGHT TO JURY.—Where parties to a suit set the case for trial in the district court for a day when by the orders of the court no jury will be in attendance, the absence of a jury will not be a reason for the continuance of the case. Litigants are chargeable with knowledge of the standing orders of the court

2. JUDGMENT FOR DAMAGES.—A claimant for damages for cutting and carrying away timber without consent of the owner, the claim having been matured into a judgment, is protected as a creditor by the statute of frauds against fraudulent conveyance by the defendants.

3. JUDGMENT WHEN DORMANT.—Where a direct proceeding has been instituted by a judgment creditor before the judgment has become dormant, it is not necessary to issue executions subsequent to such suit in order to prevent the judgment from becoming dormant.

4. VOLUNTARY CONVEYANCE—SUBSEQUENT CREDITOR.—While a mere voluntary conveyance can not be attacked by subsequent creditors, yet where such conveyance is satisfactorily shown to have been made with intent to defraud a creditor, such creditor can attack the conveyance, and, on showing such fraud, the conveyance will be set aside and the property subjected to the judgment.

**5. FACTS EVIDENCING FRAUD.**—Where a party, engaged in unlawfully cutting timber upon the lands of another, is shown to have contemplated a continuance of such trespasses, makes a voluntary conveyance of all his property, such facts are sufficient to support a finding of the fraudulent intent, and to avoid the conveyance in favor of the owner of the land upon which such trespasses were committed.

APPEAL from Franklin. Tried below before the Hon. S. B. Pounders, Special District Judge.

The opinion states the facts.

*John H. King* for appellants: 1. No party to a civil suit can be deprived of a jury by the failure of the court to call the docket on the first day of the term. (Rev. Stats., 3059, 3064; Cushman v. Flanagan, 50 Texas, 389.)

2. The petition is insufficient as it shows that F. W. Wilson was not an antecedent creditor at the date of the conveyance attacked. (De Garza v. Galvan, 55 Texas, 53.)

3. Appellees' judgment is barred as against Wilson by the statute of limitations of more than ten years. Their second suit filed in Franklin county in 1880 against Sarah Cole was not a suit to revive their judgment against Wilson's heirs. They never had a lien. If they had they lost it. Appellants can plead loss of it. (See Riggs v. Hanrick, 59 Texas, 570; 43 Cal., 185; 26 Cal., 365; 68 Texas, 418; Loss of Execution Lien, Basset v. Proetzel, 53 Texas, 579; Barron v. Thompson, 54 Texas, 235.)

4. No third party can question the validity of a conveyance unless he was a creditor at the time, or was a subsequent purchaser without notice. (De Garza v. Galvan, 55 Texas, 53; Wallet v. Haskins, 68 Texas, 418; 59 Texas, 570.)

*Hiram Glass,* for appellees: The court committed no error in overruling defendants' general and special demurrers. Where suit is brought to cancel a deed of a deceased judgment debtor on the ground of fraud, the legal representatives of such deceased debtor are not proper nor necessary parties to the suit. And where a party is indebted, or transfers all his property with a view of becoming indebted to another, and makes the conveyance with the intent to defeat the collection of the debt which he has, or is about to incur, the person or creditor so defeated or attempted to be defeated, comes within the protec-

tion of the statute concerning fraudulent conveyances. (Lott v. Kaiser, 61 Texas, 665; Heard v. McKinney, 1 Unrep. Cases, 83, and cases there cited; Willis & Bro. v. Smith, 65 Texas, 656; Bump on Fraud. Con., 2 ed., pp. 307–310, 492; Holden v. McLaury, 60 Texas, 228.)

The court did not err in his findings of the facts and law of the case. Where a person is indebted, or is incurring, or about to incur, an obligation or indebtedness, conveys all his property with the intent and for the purpose of defeating, hindering and delaying the collection of the debt or obligation which he has incurred, or with the intent of becoming indebted to another, the payment of which indebtedness he intends thereby to defeat, the conveyance is void as to the persons or creditors so defeated.

And the character of the debt that is intended to be defeated makes no difference.

Where a person has conveyed lands or other property for the purpose of defeating the collection of a debt, he can not afterwards have such property set aside in lieu of exemptions. (61 Texas, 665; Heard v. McKinney, 1 U. C., 83; Willis v. Smith, 65 Texas, 656; Bump on Fraudulent Conveyances, 307–310, 492, 493; Holden v. McLaury, 60 Texas, 228.

WALKER, ASSOCIATE JUSTICE.   July 17, 1873, John C. Terrell and A. G. Mitchell recovered judgment against Thomas A. Wilson for three hundred and sixty-three dollars and costs, for trespasses committed on their land from February 1 to June 10, 1870. The suit was filed November 5, 1870. On August 2, 1873, execution issued on said judgment, and it was returned: "No property of T. W. Wilson found." On February 8, 1870, T. W. Wilson by deed of gift conveyed all his property to his wife Julia. November 25, 1870, Wilson and wife conveyed all the said property to Mrs. Sarah Cole, the mother of Mrs. Wilson, upon expressed consideration of three thousand dollars cash, but nothing was in fact paid. Wilson and wife remained in possession until his death, June, 1879. After his death Mrs. Wilson remained in possession.

October 11, 1880, Terrell and Wadsworth, administrator of Mitchell, brought suit against Mrs. Sarah Cole to set aside the two conveyances for alleged fraud and to subject the property to the judgment. Thomas W. Wilson died insolvent and no administration was had on his estate, nor need of one. Pend-

ing the suit, defendant Cole died, leaving no property save as conveyed to her by Wilson and wife.

Julia Wilson and her sister Harriet Langston, the daughters and sole heirs of Mrs. Cole, were made defendants. They answered April 16, 1883. The case was continued from term to term until the November term, 1887, when the case was tried before a special district judge without a jury. Decree was rendered for the plaintiffs, the conveyances were set aside and sale of the property ordered, the proceeds to be applied to the judgment, and any excess to be paid to the defendants. The decree, however, exempted two hundred acres as homestead, and therefore not subject to investigation whether its sale was or not fraudulent.

The assignments of error and statement of the facts will be given in connection with the matters considered.

The first assignment of error is the refusal of the application of the defendants for a continuance. The ground for the application was that the defendants might have a jury. The suit had been pending several years. The district judge was disqualified. The term of court is two weeks. A jury had been selected for the first week only. On Friday of the first week of the term at which the trial was had defendants deposited with the clerk the jury fee. The jury for the term was discharged at some time in the first week. The special district judge had been notified by the parties of the setting of the case, by consent of the defendants, for the second week, and that his presence was not needed until the day fixed for the trial. Upon this state of facts the motion to place the case on the jury docket and to continue the case was overruled. No application was made that another jury be impannelled for the case.

In a case somewhat like this, Chief Justice Moore, in Cushman v. Flannagan, 50 Texas, 394, remarks: "An inspection of the various provisions of the law unquestionably in our opinion leads to the conclusion that all parties intending to claim a jury trial must take steps to have their cases placed upon the jury case trial docket by the time fixed by the court for its call, or certainly before it is finally disposed of and the jury dismissed for the term. * * * In view of these considerations to hold that the court should have stopped its business and impannelled another jury for the trial of this case or have continued it until the next term that it might be then tried by

a jury properly selected would be in effect to say that the jury law is a failure and a farce."

In 51 Texas, 243, Dean v. Crenshaw, in a case where one or more terms had passed without demanding a jury, it was held that a party had the right to a jury upon demanding it and payment of the jury fee by the opening of the court upon the day fixed for jury trials of the term at which the trial was had.

In 51 Texas, 475, Brown v. Chenoworth, it was held error at such succeeding term to refuse a jury when demand was made before the case was reached on the non jury docket; the jury docket having been set for a future day of the term.

While the jury law has been liberally construed we can find no authority in the law or in the precedents which would secure the right to a jury where none of the conditions for securing it have been complied with. Had a demand for a jury been made on the first day of the term, the discharge of the jury by the district judge before the day fixed for the trial of the case might have been a grounds of complaint, requiring that the case be continued. Litigants are charged with knowledge of the standing orders of the court, and where the parties by consent set down a case for trial at a day when no jury is to be expected no complaint can be made to the court proceeding with the trial without the aid of a jury. We are of opinion that the court did not err in refusing to continue the case.

The special exceptions to the petition were properly overruled. The only complaint here made to this action is based upon the assumption that the judgment sought to be enforced against the lands was a stale demand. This suit was brought October 11, 1880. The execution upon which the return of *nulla bona* was entered was issued August 2, 1873. The judgment was not barred by limitations, nor was it dormant.

The filing of the bill after the return "no property," to subject the property to the payment of the judgment, fixed a claim in the nature of a lien upon the property sought to be subjected. (1 Green Ch. Rep., 309; Edgell v. Haygood, 3 Atk. Rep., 357.) It was not necessary to proceed further in the suit for damages by keeping up the issuance of executions. (Hagan v. Walker, 14 How., U. S., 35.) The suit to avoid the deeds and subject the land to the debt afforded a basis for full relief. (Pom. Eq., sec. 1415; Story Eq. Pl., sec. 18.) The court could set aside the deeds and order the sale of the lands, the proceeds to be applied to the judgment.

"The case is not to be treated as an application by a judgment creditor for the exercise of the ancillary jurisdiction of the court to aid him in executing legal process, but it comes under a head of original jurisdiction in equity." (14 How., 33.) * * * "It is by judgment creditors against parties holding under fraudulent conveyances property subject to the judgment, and praying that the property be subjected."

The main question in the case, presented by demurrer, and in exceptions to the conclusions of law by the court, is whether the plaintiffs showed themselves to have been antecedent creditors, and whether they could complain of the transfer if they failed to show such fact.

The testimony is not conflicting, and it shows that Wilson was operating a saw mill; that on February 2, 1870, he employed parties to cut and haul pine saw logs to the mill, stipulating in writing, among other things, for the timber to be cut on the "Maximillian" survey. This survey was near the mill, and with down grade from it to the mill; that at once these employes began cutting and hauling from the land, and continued work for three months, cutting the timber from about one hundred acres. That on February 8, 1870, while his employes were engaged in depredating upon this land, Wilson, for love and affection, as expressed consideration, conveyed to his wife all the property he had. This deed was acknowledged by the husband and recorded June 17, 1870. November 25, 1870, Wilson and wife deeded the land to Mrs. Cole, the mother of the wife, without consideration, though reciting cash payment of three thousand dollars. Mrs. Cole never asserted any rights in the land against the Wilsons. Wilson held the property until his death, June, 1879, and his widow continuously thereafter. Wilson, at his death, had no property and there was no administration.

Wilson never owned the Maximillian survey nor had license to cut the timber. Terrell & Mitchell, the owners, brought suit for the timber cutting, etc., November 5, 1870, alleging the cutting down and carrying away of two hundred and sixty-three timber trees, etc., from February 1 to June 10, 1870. The judgment was rendered July 17, 1873, upon a verdict for two hundred and sixty-three dollars, and for one hundred dollars trespass, etc.; total, three hundred and sixty-three dollars. Execution issued August 2, 1873. No other debts are shown to have existed.

The findings of the court, so far as necessary to be given, are:

"4. I find that the said Thomas W. Wilson, on the eighth day of February, 1870, made a deed of gift to his wife, Julia Wilson, one of the defendants herein, to all his property, and that the deed was acknowledged on the seventeenth of June, 1870.

"5. I find that, on the twenty-fifth of November, 1870, Thomas W. Wilson and his wife Julia made a deed to all the said lands to Sarah Cole, who was the mother of the defendants Julia Wilson and Harriet Langston, and the mother-in-law of said Thomas W. Wilson.

"6. I find that said deed to Sarah Cole was without a valuable consideration. That the grantors remained in possession of said property up to the time of his death, in 1879, and that his widow, Julia Wilson, since his death, has remained in possession of the same.

"7. I find that the deed of gift from Thomas W. Wilson to his wife, Julia Wilson, was made with intent to defeat the collection of the claim upon which the said judgment of three hundred and sixty-three dollars against said Wilson was rendered, a part of which claim, I find, was, at the time said deed was made, already incurred, and that said Wilson then intended to incur the balance."

As matter of law, the court held that the conveyances were fraudulent, and the property conveyed was subject to the judgment.

Our courts have held that the statute of frauds (Rev. Stats., art. 2465) extends to the protection of persons holding claims for damages as creditors. (Holden v. McLaury, 60 Texas, 229; Cox v. Shropshire, 25 Texas, 113.)

Appellants insist that the appellees were not existing or prior creditors (or claimants of damages) at the date of Wilson's deed to his wife; and therefore can not complain at the transfer. Revised Statutes, article 2466, provides: "Every gift, conveyance, assignment, transfer or change made by a debtor which is not upon consideration deemed valuable in law, shall be void as to prior creditors unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not, on that account merely, be void as to subsequent cred-

itors, and though it be decreed to be void as to a prior cred-
itor because voluntary, it shall not for that cause be decreed
to be void as to subsequent creditors or purchasers."

This statutory rule, as explained by itself, does not prevent
a voluntary conveyance from attack by a subsequent creditor
upon showing not merely that the conveyance was voluntary,
but was made with fraudulent intent.

The Texas statute of frauds, Revised Statutes, article 2465,
which is a substantial re-enactment of the statute of 13 Eliza-
beth, ch. 5, has been construed and applied under the author-
ities from the many courts upon its terms. In Bump on Fraud-
ulent Conveyances, second edition, page 308, referring to
numerous authorities, their general effect is summed up: "It
is, accordingly, well settled that if a party makes a convey-
ance of his property with the express intent to become indebted
to another and to defraud him of his debt by means of this
artifice, such subsequent creditor may contest, and by proof
defeat, the transfer, although he was not a creditor of the
grantor at the time of the conveyance." And again: "The
simple fact of a subsequent indebtedness is not sufficient to
make a transfer fraudulent. There must exist at the time, on
the part of the grantor, a fraudulent view, and until this fraud-
ulent purpose is established, either by positive proof or the ex-
hibition of such facts as justify the inference of its actual
existence, the conveyance can not be set aside. (Id., p. 310.)

From these citations it appears that the article 2466, Revised
Statutes, is but a legislative approval of the rule of decision
theretofore followed by the courts as to the effect of a voluntary
conveyance as against the creditors of the grantor. The cases,
55 Texas, 53, De Garza v. Galvan, and 65 Texas, 658, Willis &
Bro. v. Smith, where the general proposition is given that sub-
sequent creditors can not complain, seem to have been cases
where the conveyances were attacked without producing evi-
dence of intent to defraud the complaining creditors.

Applying the strictest tests of sufficiency of proof of the
specific intent on part of Wilson to defraud the plaintiffs in
their claim sought to be satisfied, it would seem that the find-
ings of the court were sustained by the testimony. There is
no pretense of good faith on part of the grantees. Only the
testimony of the widow, that her husband was in ill health
and desired by the conveyance to provide for his family, in

event he should not return from a contempleted journey for his health into the Indian Territory.

There is complaint that there was a variance between the judgment admitted in evidence from the petition. The ground of this objection is that the number of the case does not appear in the judgment, nor does it dispose of the case as to Mrs. Julia Wilson, a defendant in the petition. The style of the judgment is "Terrell & Mitchell v. Thos. W. Wilson, et al.," and it is against Thos. W. Wilson alone for the damages and costs. There is internal evidence in it referring to the petition. Besides the execution upon it has the appropriate number, and without objection Terrell testified that he had never but the one case in that court. We see no reason for the objection made.

The testimony of defendant Mrs. Wilson to her husband's telling the mill hands not to cut timber on the Maximillian grant, was incompetent, not explaining any act. It was irrelevant, for the right to recover for the trespass was fixed by the judgment. It was immaterial and could not have affected the result. She had been allowed to testify to her husband's declarations when making the deed to her, explaining his reasons for making the conveyance. This was all that was admissible within her knowledge so far as can be ascertained from the record.

It is held here (1) that where parties set a case for hearing in the district court for a day when by the orders of the court no jury will be in attendance, the absence of a jury will not be a reason for continuing the case. (2) That the claimant for damages, for cutting and carrying away timber, etc., without the consent of the owner, the claim having been matured into judgment, is protected as if a creditor by the statute of frauds. (3) That a direct proceeding to subject property fraudulently disposed of to such judgment instituted before it has become dormant, it is not necessary to issue executions subsequent to such suit in order to prevent the judgment from becoming dormant. (4) That while a mere voluntary conveyance can not be attacked by subsequent creditors yet, where such conveyance is satisfactorily shown to have been made with the express intent to defraud such creditor, such creditor can attack the conveyance, and on showing such fraud the conveyance will be set aside and the property subjected to the claim; and (5) where a party actually engaged in cutting timber upon

the lands of another, without his consent, and is shown to contemplate a continuance of such trespasses, makes a voluntary conveyance of all his property, such facts are sufficient to support a finding of fraudulent intent and to avoid the conveyance in favor of the owner of the land upon which such trespass was committed.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

Opinion delivered October 23, 1888.