### E. DOSCHE, ADMINISTRATOR, V. AUGUST NETTE, JR.

#### No. 6934.

1. **Gift by Insolvent Debtor.**—A gift by an insolvent debtor would be void as to prior creditors, but not necessarily so as to subsequent creditors even though it should be decreed void as to prior creditors. Rev. Stats., art. 2466.

2. **Conveyance in Fraud of Future Creditors.** — Where a person makes such a conveyance with a view to shield his property from future debts it would be fraudulent as to such debts, notwithstanding he may have in his hands at the time property amply sufficient to pay all existing debts. If it were shown that the intent was fraudulent as to future liabilities it would be void.

3. **Same—Practice.**—What facts would be sufficient to support a verdict of fraudulent intent can not be stated as matter of law, and it would be beyond the province of the court to determine that the facts in evidence were insufficient.

4. **Same.**—See facts where it was error to refuse to submit the issue as to a fraudulent intent as affecting future debtors of the grantee. It should have been submitted to the jury in suit by a junior creditor attacking a fraudulent conveyance made by his debtor.

5. **Incompetent Testimony.**—In an action attacking the validity of a voluntary conveyance, the grantee, holding under his father whose estate had been administered, over objection was permitted to testify touching the balance of the judgment through which the plaintiff claimed by sheriff sale, that "plaintiff had presented such claim for $3000, which was rejected as an unjust claim." *Held,* the claim itself was the best evidence, and the statement that it was unjust was but opinion, and the admission of the testimony was error.

APPEAL from Bexar. Tried below before Hon. Geo. H. Noonan. The opinion states the case.

*C. Upson* and *Otto Bergstrom,* for appellant.—1. If a solvent grantor makes a voluntary conveyance of property in contemplation of future indebtedness or with intent to hinder, delay, or defraud his creditors, either prior or subsequent creditors, such deed can be attacked by any of said creditors and would be void as to them. Raymond v. Cook, 31 Texas, 385; Moreland v. Atchison, 34 Texas, 351.

2. The legal effect of a conveyance by a party indebted at the time, without reference to the actual intent of the debtor, is prima facie in fraud of creditors. To rebut such legal presumption of fraud the onus is upon the party seeking to uphold the gift, and the proof must be clear, full, and satisfactory. If there is a reasonable doubt of the adequacy of the grantor's means then the voluntary conveyance must fall. Dixon v. Sanderson, 72 Texas, 359; Wait on Fraud. Conv., secs. 200–208; Bump on Fraud. Conv., 2 ed., p. 280; Id., 285; Reade v. Livingston, 8 Am. Dec., 532–537.

3. In determining the question of fraud all of the facts surrounding the transaction and all of the circumstances of the particular case must be taken into account, and the jury should be so instructed. 2 Thomp. on Trials, secs., 208–212, 2310; Wait on Fraud. Conv., sec. 224.

*L. C. Grothaus, C. H. Clifford,* and *B. L. Aycock,* for appellee.—1. Appellant having alleged his intestate was an antecedent creditor and by no averments brought his case within the rule governing the rights of subsequent creditors, his case must stand or fall upon its allegations. Parker v. Beavers, 19 Texas, 409.

2. The grantor had abundance of property with which to pay his debts, and the verdict of the jury was right, and if any technical error was committed in the charge it is no cause for reversal.

COLLARD, JUDGE, *Section A.*—This suit was brought May 11, 1883, by E. Dosche, administrator of the estate of A. Schloeman, a judgment creditor of A. Nette, Sr., against A. Nette, Jr., to set aside a voluntary conveyance to a certain lot in San Antonio made by A. Nette, Sr., to A. Nette, Jr., of date May 22, 1876, filed for record same day and recorded 9th of June following. The consideration for the conveyance was love and affection. The vendor was the father of the vendee. The petition alleged that the deed was fraudulent and void, and was made to hinder, delay, and defraud creditors of A. Nette, Sr. Defendant answered by general denial, pleas of limitation of three and five years, and that if the conveyance was voluntary it was made at a time when his father was perfectly solvent, and that it was a reasonable advancement to him out of his father's estate. Defendant also pleaded the laches of the plaintiff in not sooner seeking to have the conveyance set aside. There was a verdict and judgment for Nette, and Dosche appealed.

Appellant claims the land by virtue of sale and sheriff's deed under a judgment for $5361.63 against A. Nette, Sr., rendered on June 14, 1880, in favor of Schloeman's estate upon two notes, one for $4500, bearing date January 1, 1877, and the other for $700, of date January 1, 1878, both due in one year.

From the year 1867 to 1871 A. Nette, Sr., was engaged with others in a meat extract business, each of the owners being liable for its obligations. It failed in 1871, leaving the owners in debt about $18,000.

Mrs. Elise Nette, appellee's mother, testified: "Before my husband was connected with the meat extract business he had no debts and owed nothing; afterward, when the meat extract business turned out to be a failure, Mr. Nette borrowed money from Dr. Schloeman, Major Kampmann, and others. As already stated, A. Nette, Sr., had no debts before he got connected with the meat extract business; that financially ruined and involved him in debt, compelling him even to pay other people's debts. My husband about fourteen years ago conveyed the property on Losoya Street to our daughter Emma as a wedding present to her. The defendant in this suit is my son. It was the failure of the meat extract company that involved my husband in financial difficul-

ties. I do not remember the dates when he was so involved, but I know that it involved my husband A. Nette, Sr., to the extent of about $15,000, which he had to pay by reason of the failure of that company."

There was evidence to the effect that A. Nette, Sr., had stated that the note for $4500 to Schloeman was borrowed and used in the meat extract business; that he incurred a large indebtedness on account of that business, from $10,000 to $20,000, and that he had to borrow money from his friends to meet his obligations. It was in proof that the debt of the meat extract business was divided up and assumed by the members of the firm, Nette assuming to pay $2500, which he probably paid. Many evidences of debt on the part of Nette were exhibited in evidence by plaintiff below, beside the notes to plaintiff's intestate: To Singlestein a note for $1200, borrowed in 1875; to Kampmann a note for $2560, date January 23, 1879; to F. Gross a trust deed to secure $3000, date December 19, 1876; to Shiffers a note for $1300, date January 1, 1877; to Shiffers a note for $400, date July 24, 1877; to Shiffers a note for $300, date January 4, 1878; to Kampmann a note for $5000, date January 11, 1878. A note for $15,000 signed by himself and six others to the San Antonio National Bank, secured by a deed of trust given by the meat extract company, dated June 27, 1871. Nette's individual transactions with the San Antonio National Bank from April, 1868, to February, 1879, on account of borrowed money, amounted to $27,950, all of which he paid back. It was shown that Nette discharged in his lifetime and his administrator after his death, in 1881, all of his debts except $1980.72 (shown by the final account of his administrator), and the balance due of plaintiff's judgment, $3216.63, in all $5197.35.

The estate was inventoried at $15,480, but it seems the administrator realized some $3900 more than its appraised value, or $18,916.95. The administrator was allowed a credit of $1465, costs of court, funeral expenses, and taxes, $1734.38 commissions, attorney fees $100, additional costs of court $33.90, and additional taxes $139.12. The final account in the estate shows that if these last amounts paid for funeral expenses, taxes, and expenses of administration had been paid on debts all of them would have been discharged except about $2627.33. Dosche testified that all that was ever paid on his judgment was $2145 —the amount the property levied on sold for—and that such property was all he could find of Nette's unincumbered. The balance of his claim was never presented to the administrator for allowance. On the 26th of July, 1878, Nette made a conveyance to his wife for lots and improvements on Commerce Street, reciting a consideration of natural love and affection. Before this, October 9, 1871, he made a present, as a wedding gift, to his daughter of a lot and improvements in San Antonio.

The foregoing facts will explain the issue as nearly as can be done.

In the sixth clause of his charge the court instructed the jury in the exact language of the statute of frauds (article 2466, Revised Statutes) in relation to a voluntary conveyance.

The seventh is as follows: "The consideration stated in the deed from August Nette, Sr., to his son, the defendant, being for love and affection and one dollar, is not a valuable consideration in law; therefore, if you believe from the evidence that at the time said deed was made the said A. Nette, Sr., was indebted to A. Schloeman, then the said deed is void as to plaintiff, the estate of said A. Schloeman, and you will find a verdict for plaintiff, unless you further find from the evidence that at the time said deed was made the said A. Nette, Sr., was possessed of property subject to execution within this State sufficient to pay his existing debts."

The ninth clause is as follows: "If, however, you believe from the evidence that the alleged debt of Nette, Sr., to Schloeman was made subsequent to the date of the deed from said Nette, Sr.; to Nette, Jr., and at a period when the financial ability of said Nette, Sr., was ample to meet any and all demands upon him, and that he was entirely solvent, then the deed or gift to his son can not be attacked by such subsequent creditor, and your verdict will be for the defendant."

The tenth clause of the charge is as follows: "If you find from the evidence that at the date of the voluntary conveyance from Nette, Sr., to Nette, Jr., of the lot in controversy in this suit, the said Nette, Sr., had an abundance of property in his possession, both real and personal, subject to execution, and all situated within the State of Texas, and more than sufficient to pay all of his debts, including the claim set up by plaintiff, you will find for the defendant."

Appellant's first assignment of error criticises these instructions, because he says they assume that a solvent debtor may lawfully make a voluntary conveyance or gift of any portion of his estate, though the remainder of his estate be insufficient to meet his liabilities; and because the same are not qualified to the effect that the conveyance would be void if made in contemplation of insolvency and to hinder, delay, or defraud subsequent creditors; and because the same are charges upon the weight of evidence in this, that the evidence tended to show that the conveyance was made when the grantor was insolvent or in contemplation of insolvency, and for the purpose of hindering, delaying, and defrauding creditors.

No critical examination of the instructions is necessary to show that they are not upon the weight of evidence. The charges must be construed together. All the qualification the law could warrant of the general proposition as to sufficiency of property to pay *existing* debts was contained in the tenth paragraph of the general charge. The rule is there recognized and well expressed, that after a voluntary conveyance there must be ample means left in the hands of the debtor within

reach of the creditors to pay their debts. Dixon v. Saunderson, 72 Texas, 359. The question as to subsequent debts involved in the ninth clause of the charge will be considered further on in connection with the assignment relating to a conveyance without consideration deemed valuable in law, made with intent to defraud subsequent creditors, and in contemplation of insolvency.

The court refused to give two special instructions requested by plaintiff, which is claimed to be error. They are as follows: "To constitute a conveyance fraudulent and void as to creditors it is not necessary that the debtor making the conveyance should thereby designedly intend to defraud his creditors or be guilty of a moral or willful fraud, but if he makes a conveyance at a time when he is not possessed of sufficient property subject to execution to pay his existing debts, and the effect of such conveyance is to hinder, delay, or prevent his creditors from collecting their just claims against him in whole or in part, the same is in law fraudulent and void.

"The deed from Nette, Sr., to defendant is what is known in law as a voluntary conveyance. If you believe from the evidence that at the time said deed was made that said Nette, Sr., the grantor, was deeply indebted and that the property possessed by him in this State subject to execution was insufficient or barely sufficient to pay his existing debts, these facts would raise a strong presumption that said deed was made in fraud of creditors, both as to prior and subsequent creditors."

Such portions of these charges as were applicable to existing debts had been given in the general charge of the court, and there was no error in refusing them.

Plaintiff requested the following charge, which was refused, upon which error is assigned: "If you believe from the evidence that the said Nette, Sr., did not become indebted to Schloeman until after, and not for a debt existing at, the time of the execution of the deed from Nette, Sr., to defendant, then plaintiff would be a subsequent creditor of Nette, Sr., and in that event, if you believe from the evidence that said Nette, Sr., made said deed to his son with intent to place the lot in question beyond the reach of and to hinder, delay, or defraud his creditors, whether prior or subsequent creditors, and in contemplation of contracting future debts, said deed would be void as to plaintiff, and your verdict should be for the plaintiff."

A gift by an insolvent debtor would be void as to prior creditors, but not necessarily so as to subsequent creditors, even though it should be decreed to be void as to prior creditors. Rev. Stats., art. 2466. When a person makes such a conveyance with a view to shield his property from future debts it would be fraudulent as to such debts, notwithstanding he may have in his hands at the time property amply sufficient to pay all existing debts. If it is shown that the intent is fraudulent as to future liabilities, it would be void. Thomp. on Trials,

sec. 2013; Hutchinson v. Keely, 39 Am. Dec., 250. As to subsequent debts the question of intent in executing a voluntary conveyance is one of fact to be ascertained from evidence, either circumstantial or direct, as in other cases; but no legal presumption of fraud would arise from the mere fact that debts were subsequently created. As before stated, the fact must be derived and ascertained from the evidence. Jenkins v. Clement, 14 Am. Dec., note on Subsequent Creditors. What facts or circumstances would be sufficient to support a verdict of fraudulent intent could not be stated as a matter of law, and it would be beyond the province of the court to determine that the facts were insufficient. The present is a case of the latter description, calling for a finding on the facts in evidence.

Our opinion is that the court should have instructed the jury, as requested, that if the conveyance was made with a view to protect the property of the donor from future debts and with intent to defraud such creditors it would be void. We do not intend to intimate that the jury should have so determined the issue, but that there was sufficient evidence to authorize the court to have submitted the question to their decision. It is contended that there was error in permitting defendant to testify, over plaintiff's objections, that he paid the latter one hundred and sixty odd dollars on the claim after his father's death. The evidence was admissible upon the issue as to how much of the debts the estate was able to pay and did pay.

In response to another assignment, we think there was error in permitting defendant to testify, over objections, that Dosche presented a claim to him for $3000 balance due on the judgment against Nette, Sr., which was rejected "as an unjust claim." The claim itself with its indorsements was the best evidence, and the statement that the claim was unjust was only an opinion of the witness, and was calculated to prejudice the jury as stated in the bill of exceptions.

Grothaus was permitted to state over objections, that "the reasons the claims of Kampmann and others were not paid was because they were not presented within a year after administration was opened." If the records or files in the Probate Court in the administration showed the facts, or if the evidence of the fact was in writing, the objection to the testimony was technically correct, there being no attempt to account for the nonproduction of the best evidence. If the fact sought to be proved was not in writing the evidence was admissible.

We are of opinion that the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 2, 1891.