**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 15, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-20941

_____

IN RE: STRUCTURAL SOFTWARE, INC.,

Debtor
----------------------------------------

S. RAO GUNTUR; SAID IRANNEZHAAD,

Appellants,

versus

ENGINEERING DYNAMICS, INC.,

Appellee.
_____

Appeal from the United States District Court
for the Southern District of Texas
Civil Docket H-00-CV-2571
_____

Before JONES and BENAVIDES, Circuit Judges and KAZEN, District
Judge.[*]

PER CURIAM:[**]

This appeal arises out of an adversary proceeding brought

by Engineering Dynamics, Inc. ("EDI") on behalf of bankruptcy

debtor Structural Software, Inc. ("SSI") against SSI's sole

shareholders, S. Rao Guntur and Said Irannezhaad.  EDI alleges that

---

[*]District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Guntur and Irannezhaad usurped a corporate opportunity belonging to SSI. The opportunity at issue was the right to obtain stock in Zentech, Inc. ("Zentech") in exchange for the marketing rights and service rights related to a computer program called StruCAD*3D ("StruCAD"). SSI is the owner of StruCAD. The bankruptcy court held that Guntur and Irannezhaad did usurp a corporate opportunity of SSI and entered judgment against them. The district court affirmed the judgment of the bankruptcy court. Finding no reversible error, we affirm.

## BACKGROUND

In 1989, EDI sued SSI for copyright infringement. EDI alleged that StruCAD infringed copyrights owned by EDI. In 1991, the United States District Court for the Eastern District of Louisiana entered judgment in favor of EDI and awarded $250,000 in damages. The district court's judgment was affirmed in part, reversed in part, and remanded. Eng'g Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335 (5th Cir. 1994), modified by, 46 F.3d 408 (1995). This case, on remand, is still pending or has just been concluded in the district court.

In July 1989 (after EDI sued SSI), SSI entered into a marketing agreement ("Marketing Agreement") with Zentech under which Zentech agreed to be SSI's exclusive marketing agent for StruCAD and to be solely responsible for the marketing costs in

2

exchange for fifty percent of all revenues derived from the sale of StruCAD. On December 31, 1990, SSI entered into a new agreement ("Maintenance Agreement") with Zentech under which Zentech agreed that, in addition to its role as SSI's marketing agent, it would be responsible for upgrading StruCAD and providing maintenance and customer support services related to StruCAD. Under the Maintenance Agreement, which modified the Marketing Agreement, Zentech received eighty percent of the sales revenue as well as all revenue derived from providing maintenance services related to StruCAD. Concurrent with the execution of the Maintenance Agreement, Zentech hired Guntur and Irannezhaad as employees for a base annual salary of $60,000. Guntur and Irannezhaad were at this time also given Zentech common stock. Guntur received 30.333% of the common stock in Zentech, while Irannezhaad received 5% of the common stock.

SSI filed for bankruptcy on June 23, 1992 due to EDI's efforts to collect on its judgment against SSI. In 1993, EDI, on behalf of SSI, brought an adversary proceeding against Guntur and Irannezhaad "in order to recover avoidable transfers." The bankruptcy court issued an order authorizing EDI to bring the claims at issue in this case against Guntur and Irannezhaad.[1] The

_____

[1]The bankruptcy court issued an order authorizing EDI, in lieu of the trustee, to pursue avoidance actions against Guntur and Irannezhaad to recover assets for the SSI estate. The

3

bankruptcy court found that the stock received by Guntur and Irannezhaad was not in return for their employment by Zentech, but rather was in return for SSI's execution of the Maintenance Agreement. As such, the bankruptcy court concluded that the Zentech stock was a corporate opportunity of SSI that had been misappropriated by Guntur and Irannezhaad and that the Zentech stock properly belonged to the SSI Estate.

The bankruptcy court as part of its judgment imposed a constructive trust on the Zentech stock received by Guntur and Irannezhaad in connection with the Maintenance Agreement. The bankruptcy court thus ordered that the SSI Estate recover 114,666.4 shares of Zentech held by Guntur at the time judgment was entered and 40,000 shares of Zentech held by Irannezhaad at the time judgment was entered. The bankruptcy court also held that the SSI Estate was entitled to recover $696,000 from Guntur and $242,000 from Irannezhaad for cash they received from a previous sale of Zentech stock to TDI-Halter, Inc. in November 1997.

## DISCUSSION

We review bankruptcy court rulings and decisions "under the same standards employed by the district court hearing the

---

bankruptcy court stated that the corporate opportunity claim that is the subject of this appeal was authorized by the order. SSI does not challenge this order on appeal and as such we do not address its propriety.

4

appeal from bankruptcy court; conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." Century Indem. Co. v. NGC Settlement Trust (In re National Gypsum Co.), 208 F.3d 498, 504 (5th Cir. 2000). Under a clear error standard, we will reverse a finding of fact "only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 565 (5th Cir. 1995) (quoting Allison v. Roberts (In re Allison), 960 F.2d 481, 483 (5th Cir. 1992)).

Under Texas law, to establish a breach of fiduciary duty for usurping a corporate opportunity "the corporation must prove that an officer or director misappropriated a business opportunity that properly belongs to the corporation." Landon v. S&H Mktg. Group, 82 S.W.3d 666, 681 (Tex. App.–Eastland 2002, no pet.); see also International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 576-78 (Tex. 1963); Alexander v. Sturkie, 909 S.W.2d 166, 169 (Tex. App.–Houston [14th Dist.] 1995, writ denied). "The business opportunity arises where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity." Icom Systems, Inc. v. Davies, 990 S.W.2d 408, 410 (Tex. App.–Texarkana 1999, no writ) (citing Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc., 779 S.W.2d 474,

5

477 (Tex. App.–El Paso 1989, writ denied)). To determine whether a corporation has a legitimate interest in a corporate opportunity, the court must inquire as to whether the alleged opportunity was in the corporation's "line of business." Id.

Guntur and Irannezhaad argue that the bankruptcy court erred in determining that the right to obtain the Zentech stock was a corporate opportunity that belonged to SSI because SSI did not have a legitimate interest in the stock. Guntur and Irannezhaad contend that the bankruptcy court clearly erred in holding that the Zentech stock they received was in fact consideration for SSI's execution of the Maintenance Agreement. We disagree. The record contains sufficient evidence from which the bankruptcy court could infer that the right to acquire the Zentech stock was a corporate opportunity of SSI.

Guntur and Irannezhaad point out that there was evidence that Zentech would never have provided stock to SSI and additionally that there was no evidence that SSI was interested in acquiring Zentech stock. Thus, they argue that acquisition of Zentech stock could not have been a corporate opportunity of SSI. This argument fails, however, because it defines the corporate opportunity at issue too narrowly. While SSI may not have had an interest specifically in acquiring Zentech stock, it certainly did

have an interest in receiving the appropriate level of consideration for its execution of the Maintenance Agreement.

Guntur and Irannezhaad also argue that because SSI did not have the financial resources to carry out the opportunity to obtain the Zentech stock, they could not have usurped a corporate opportunity of SSI. Icom Systems, Inc., 990 S.W.2d at 410 (to usurp a corporate opportunity, corporation must have resources to take advantage of the opportunity). Further, inasmuch as the stock was consideration for their employment with Zentech, SSI could not have provided the engineering services that they were to perform as employees of Zentech. This argument fails because, as noted previously, the bankruptcy court did not clearly err in finding that the Zentech stock served as consideration for execution of the Maintenance Agreement rather than for Guntur's and Irannezhaad's personal services.

Additionally, Guntur and Irannezhaad argue that even if the right to the Zentech stock was a corporate opportunity of SSI, they did not improperly usurp the opportunity because SSI's only shareholders (Guntur and Irannezhaad) ratified the transaction. It is usually a defense to a claim of usurpation of the corporate opportunity that all of the corporation's shareholders ratify the transaction. Safety Int'l, Inc. v. Dyer (In re Safety Int'l, Inc.), 775 F.2d 660, 662 (5th Cir. 1985); Dyer, 779 S.W.2d at 478.

7

Creditors, however, can challenge the breach if the transaction is made to defraud creditors or if it is completed while the corporation is insolvent. Dyer, 779 S.W.2d at 477; see also Newman v. Toy, 926 S.W.2d 629, 631 (Tex. App.–Austin 1996, writ denied) ("A sole shareholder or all shareholders acting in agreement, being all the beneficial owners of corporate property, may themselves deal with such property so long as the rights of creditors are not prejudiced ..."). A bankruptcy trustee has the right to assert the general claims of creditors for the benefit of the bankruptcy estate and the creditors. Schimmelpenninck v. Byrne (In re Schimmelpenninck), 183 F.3d 347, 359 (5th Cir. 1999).

At the time of the Zentech transaction, EDI was a creditor of SSI according to Texas law. As the Texas Supreme Court stated, at common law "one who at the time a transfer of property is made has a right to recover damages in tort may avoid the transfer as fraudulent if the transfer is made for the purpose of defeating his right." Hollins v. Rapid Transit Lines, Inc., 440 S.W.2d 57, 60 (1969) (quoting Murphy v. Dantowitz, 142 Conn. 320, 114 A.2d 194, 196-97 (1955)). Since EDI and other creditors existed at the relevant time, the bankruptcy court could find that Guntur's and Irannezhaad's ratification of the agreement was ineffective as a defense to usurpation of the corporate opportunity.

8

Guntur and Irannezhaad also appeal the bankruptcy court's award of monetary damages in favor of EDI for the Zentech stock that Guntur and Irannezhaad sold in 1997 to TDI-Halter, Inc. Guntur and Irannezhaad argue that the imposition of a constructive trust was improper and that at the most EDI is only entitled to monetary damages based on the value of the stock on January 1, 1991 (the effective date of the stock transfer).

We find their argument unpersuasive. Texas courts have previously held that imposition of a constructive trust is a proper remedy when a fiduciary usurps a corporate opportunity. In Canion, the court held that "[a]n officer or director who diverts [a corporate] opportunity and embraces it as his own is chargeable as a constructive trustee for the benefit of the corporation and holds all of the profits and benefits received therefrom for the corporation." Canion v. Texas Supply, Inc., 537 S.W.2d 510, 513 (Tex. Civ. App.–Austin 1976, writ ref'd n.r.e.). As such, EDI is entitled a constructive trust on the Zentech stock received by Guntur and Irannezhaad.

When a constructive trust is imposed, a fiduciary who misappropriated the property of another is liable not only for the value of the property he misappropriated but also for any profits he derived from his wrongful possession of the property. Meadows v. Bierschwale, 516 S.W.2d 125, 129 (Tex. 1974). In this case,

that would be the money received by Guntur and Irannezhaad from selling the Zentech stock (even to the extent the payment exceeded the value of the stock when they received it in 1991). Since a constructive trust is an appropriate remedy, it was appropriate for the bankruptcy court to award monetary damages for the full amount of money Guntur and Irannezhaad received from TDI-Halter.

Guntur and Irannezhaad finally argue that the bankruptcy court's judgment cannot be based upon the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001, et seq. (Vernon 2002) for fifteen different reasons. Their arguments are without merit because the bankruptcy court's judgment is based upon liability for usurpation of a corporate opportunity under Texas common law and not under the fraudulent transfer statute.

For these reasons, the bankruptcy court did not err in its conclusions of law nor did it clearly err with respect to any findings of fact. Finding no reversible error, we affirm.

**AFFIRMED.**